**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

NICK SUCIU, III, et al.,

Plaintiff,

v.

HEIDI WASHINGTON, et al.,

Defendants.
_____________________________________/

CASE NO. 12-12316

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANTS' REASSERTED MOTION TO DISMISS**

Before the Court is Defendants' Reasserted Motion to Dismiss. (Doc. No. 12). The Court heard oral argument on Plaintiffs' motion on September 13, 2012, and at the conclusion of the hearing informed the parties that it would take the motion under advisement. The Court has reviewed all the filings and, for the reasons that follow, Defendants' Motion is **GRANTED**.

## I. FACTS

Plaintiffs Nick Suciu, III, Gerald Lorence, Craig Davis, Dory Barton, and Lee Somerville filed suit on behalf of themselves and all similarly situated attorneys who represent or seek to represent incarcerated individuals confined with the Michigan Department of Corrections ("MDOC"). Defendants are employees of the MDOC: Daniel Heyns is the Director of MDOC; Heidi Washington is the Warden of Charles Egeler Reception and Guidance Center (Egeler); Shirlee Harry is the Warden of Pugsley Correctional Facility (Pugley). Plaintiffs assert that Defendants violated 42 U.S.C. § 1983 by restricting the time and place of visitation with prisoners.

According to Plaintiffs' First Amended Complaint (FAC), since June 13, 2011, Defendants, under the direction of Heyns, "have unreasonably restricted, without a valid, rational connection to a legitimate penological interest, the ability of civil and criminal attorneys to meet with incarcerated individuals, to have confidential visits and to develop attorney-client relationships with incarcerated clients, potential clients or witnesses." (FAC at 1). When the MDOC instituted the new visiting days and visiting hours restrictions on June 13, 2011, it eliminated Tuesday and Wednesday visiting hours altogether. Standard visiting hours vary from prison to prison, and attorneys are required to abide by the visitation restrictions; however, the policy provides for exceptions. Specifically, MDOC Policy 05.03.140 at Paragraph N allows for an attorney or representative acting on the attorney's behalf, on official business with the prisoner to "visit outside of standard visiting hours with prior approval of the Warden or designee." (Doc. No. 8, Ex 2). According to the FAC, individual wardens are instructed not to approve exceptions absent "extenuating circumstances" such as "an imposed deadline such as a filing deadline or a hearing date." (FAC at ¶¶ 32-34). Prior to the current policy, attorneys were not required to show extenuating circumstances to visit incarcerated individuals outside the standard vising hours.

MDOC also has a policy directive covering confidentiality during attorney client visits. Paragraph B of PD 05.03.116 reads in relevant part, "If requested by the attorney, staff shall arrange a location where the visit can be conducted without being overheard by staff or other prisoners. Whenever possible, such a request should be made in advance of the visit to assist in planning for a private room or other area." (Doc. No. 8, Ex. D).

In Count I, Plaintiffs allege a violation of their First Amendment right to communicate

with clients who are incarcerated in Michigan prisons in that MDOC restricted visitation without a legitimate penological interest. (FAC at ¶¶100-103). In Count II Plaintiffs allege a violation of their First Amendment Right to associate with clients, potential clients, and/or possible witnesses who are incarcerated in Michigan prisoners (FAC at ¶¶ 105-106). In Count III, Plaintiffs allege violations of their Sixth Amendment Right of Counsel to Visit with Clients; and in Count IV, their Sixth Amendment Right to Confidential Communications.

**III. STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) allows a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted." In assessing the motion, the court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998) (internal citation omitted). To survive a motion to dismiss, the complaint must allege grounds entitling plaintiff to relief, which requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Ashcroft v. Iqbal, 556 U.S. 662, 668(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The Court must accept the well-pleaded factual allegations as true. Hensley

Mfg. v. ProPride, Inc., 579 F.3d 603 (6th Cir. 2009) (citing Twombly, 550 U.S. at 555). Although the plausibility standard is not equivalent to a " 'probability requirement,'. . .it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556.).

**III. ANALYSIS**

Section 1983 does not provide for substantive rights; it is "a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266 (1994). It reads in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

To plead a § 1983 violation, a plaintiff must allege facts from which it may be inferred that (1) he was deprived of a federal right, and (2) a person who committed the alleged violation acted under color of state law. West v. Atkins, 487 U.S. 42, 28 (1988).

Here, there is no dispute regarding the status of the actors; therefore, the Court addresses whether Plaintiffs suffered any deprivations of rights secured by the Constitution.

**A. Sixth Amendment**

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel, but it "only applies to a defendant's trial and first appeal as of right, not to appeals afforded on a discretionary basis, collateral proceedings, or civil proceedings

such as civil rights claims challenging prison conditions." Bourdon v. Loughren, 386 F.3d 88, 96 (2d Cir. 2004) (citing Pennsylvania v. Finley, 481 U.S. 551, 555-57 (1987)). Even the afforded protections have limits, however, as the U.S. Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Examples of unconstitutional limits on prisoners' rights to counsel include a ban on all visits by paralegals employed by criminal defense counsel and repeated delays in meetings between prisoners and attorneys that resulted in attorneys forgoing the meetings. Benjamin v. Fraser, 264 F.3d 175, 187 (2d Cir. 2001).

Although the parties do not raise constitutional limitations relative to standing they do dispute whether Plaintiffs have standing to pursue the Sixth Amendment claims of others as advanced in Counts III and IV of the Amended Complaint. Specifically, Plaintiffs pursue claims on behalf of their clients, potential clients, and witnesses.

Typically, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. Warth v. Seldin, 422 U.S. 490, 499 (1975). Nevertheless, third-party standing to assert the rights of another may exist, provided "the party asserting the right has a close relationship with the person who possesses the right; and there is a hindrance to the possessor's ability to protect his own interests." Kowalski v. Tesmer, 543 U.S. 125, 129-30 (2004) (citations omitted). The parties disagree as to whether the elements are satisfied.

*a. Close Relationship*

In Kowalski, the Supreme Court reviewed a Michigan statute that denied appointed appellate counsel to indigent defendants who pleaded guilty, absent some exception.

Kowalski, 543 U.S. at 127–28. Two attorneys filed suit, invoking a future attorney-client relationship with "as yet unascertained Michigan criminal defendants who will request, but be denied, the appointment of appellate counsel, based on the operation of the statute." Id. at 131. At the outset of its analysis, the Court observed that although it had recognized an existing attorney-client relationship as sufficient to confer third-party standing, 543 U.S. at 130, a "hypothetical" attorney-client relationship with future indigent defendants who would be denied appellate counsel was not close enough to support standing. Id., 543 U.S. at 130–31.

Here, Plaintiffs' relationship with hypothetical future clients is no closer than the relationship of the defense attorneys in Kowalski. An attorney client relationship does not exist relative to potential clients or witnesses. Consequently, the Court finds that a close relationship, sufficient to meet the first prong of the test, exists only between Plaintiffs and their existing clients. Therefore, the Court directs its attention to whether those existing prisoner clients face a hindrance in protecting their own interests relative to visitation.

*b. Hindrance*

According to Plaintiffs, existing prisoner clients are hindered from advancing their own constitutional rights because prisoners likely are unaware that their attorneys have been denied visits. Further, these prisoners lack the legal skills to bring a challenge to the visiting restrictions. The Court disagrees.

Certainly, counsel would disclose information about a denied visit to a client. Further, the claim arising from this violation are not complex factually or legally. This Court finds that the type of hindrance necessary to allow third-party standing is not met.

In the alternative, Plaintiffs argue that to the extent that prisoners request injunctive

relief, their claims would be moot because the criminal appeals as of right would be finalized before the civil lawsuit challenging the delay or denial of visitation could be resolved. Without question, "imminent mootness" is a recognized basis for satisfying the second prong of the test. See Singleton v. Wulff, 428 U.S. 106, 118 (1976) (according physicians third-party standing because of the "imminent mootness" of a pregnant woman's challenge to a statute restricting the circumstances in which pregnant women may receive medicaid benefits for abortions); Craig v. Boren, 429 U.S. 190, 192–93 (1976) (permitting vendor to continue equal protection challenge to a statute prohibiting certain alcohol sales to male minors when the named plaintiff turned 21 during the course of the litigation).

Nevertheless, the Court disagrees with Plaintiffs' contention that "imminent mootness," is a sufficient hindrance here. Prisoners may pursue relief through the grievance process and through the courts. These methods would be effective to resolve the issue before any loss of standing. In Kowalski, the Supreme Court found the hindrance prong of the test was not satisfied because an indigent denied appellate counsel had other means by which to pursue a denial of constitutional rights, including appeal and collateral review. Plaintiffs' attempts to distinguish the situation here are not persuasive. Therefore, this Court finds that the second prong of the Kowalski test is not satisfied. Because Plaintiffs lack standing to bring the Sixth Amendment claims, Counts III and IV are dismissed.

**B. First Amendment**

In support of their First Amendment claims, Plaintiffs contend that the MDOC has placed arbitrary and unreasonable restrictions on the times and days they are allowed to visit with their clients, potential clients and/or witnesses. Because freedom of association

"is among the rights least compatible with incarceration [and] curtailment of that right must be expected in the prison context," Overton v. Bazzetta, 539 U.S. 126 (2003), Plaintiffs face challenges in succeeding on their claims.

Plaintiffs assert that the restrictions serve no legitimate penological interest. As support for their contention, Plaintiffs rely on a series of communications regarding the changes to visitation from a MDOC employee and declarations from two former MDOC employees. Although Defendants raised no challenge to these exhibits, and in fact attach an email from a MDOC employee, before addressing the merits, the Court must decide whether to consider the exhibits offered by Plaintiffs in support of their response.

Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6). . .matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). A court may consider "documents incorporated into a complaint by reference and matters of which a court may take judicial notice" without converting the motion into one for summary judgment. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007).

The MDOC communications are referenced in the FAC and are part and parcel of the claims advanced by Plaintiffs. Therefore, the Court finds consideration appropriate in the context of a Rule 12(b)(6) motion. The declarations of the former MDOC employees, however, are not. Therefore, those declarations play no role in the Court's analysis.

Although prisoners have a general constitutional right to visit with their legal counsel, the right is not absolute. "Prison officials may restrict such attorney-client contacts through reasonable administrative rules and practices for the maintenance of prison security and order, provided the rules do not "unjustifiably obstruct" [a] plaintiff's ability to consult with his

attorney." Howard v. Cronk, 526 F. Supp. 1227, 1229 (S.D.N.Y. 1981). Accord King v. Caruso, 542 F. Supp.2d 703, 713 (E. D Mich. 2008) (observing that "[p]rison officials may impinge on a prisoner and his visitor's First Amendment rights if their actions are reasonably related to legitimate penological interest").

Certainly, the visiting hours limitations obstruct the availability of professional representation. Prior to the imposition, attorneys could visit from 8 a.m. to 8 p.m., Monday through Friday, and on weekends with an advance phone call. In contrast, now attorneys can visit five days--Monday, Thursday, Friday, Saturday, and Sunday, during standard visiting hours, which are not as lengthy. Because limitations are allowed, the issue before this Court is whether the limitations obstruct unreasonably. The Court finds that the limitations are not unreasonably obstructive. Notably, attorneys may get prior approval to visit outside the standard visiting hours. The fact that Defendants did not approve the prior requests of some Plaintiffs does not alter the analysis because the facts as alleged reflect that the requests for visits outside the standard visiting hours were based upon personal convenience. The First Amended Complaint contains no allegations that a warden denied a request in light of extenuating circumstances.

Nor is the analysis altered by the MDOC communications. In the first email, dated June 14, 2011, Norma Killough, a MDOC employee, recommends that despite the new visiting schedule, attorney visits on Tuesday and Wednesdays should not be prohibited. (Doc. No. 15, Ex. 3). She adds that a prohibition would lead to a court fight. (Id.) The second email, which was sent June 29, 2011, reiterates the policy of requiring warden approval for visits outside visiting hours and limits approval to "extenuating circumstances." (Doc. No. 15, Ex. 4). The third email, dated July 20, 2011, provides examples of

extenuating circumstances. Even thought the MDOC expressed initial concern about limiting visits from attorneys, here, no flat ban is in place. Attorneys are required to provide a reason beyond scheduling convenience to visit a prisoner during nonvisiting hours. (Doc. No. 15, Ex. 5). The Constitution does not require the MDOC to adjust standard visitation hours to accommodate an attorney's schedule. The visiting hours are in effect to maintain the legitimate penological interest of orderly visitation and institutional security.

Finally, Plaintiffs proceed on the assertion that as counsel, they are entitled to visit incarcerated clients and communicate in a location that ensures confidentiality. Again the MDOC policy affords access to a confidential visits, provided an attorney requests it, and the confidential visiting area is available. Attorneys are instructed that a request should be made in advance. The First Amended Complaint contains no allegation that an attorney that complied with the policy to secure a confidential location was denied the opportunity to do so. Accordingly, the Court finds no cognizable claim under the First Amendment has been pleaded.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Reasserted Motion to Dismiss.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Date: October 11, 2012

**CERTIFICATE OF SERVICE**

Copies of this Opinion and Order were mailed and/or electronically filed to counsel of record on this date.

s/Bernadette M. Thebolt
Case Manager